■ BIB CONSTRUCTION Co., INC., Respondent, v FIREMAN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY, Appellant, et al., Counterclaim Defendants. [625 NYS2d 550] —Order of the Supreme Court, New York County (Ira Gammerman, J.), entered October 25, 1994, which denied defendant Fireman's Insurance Company's motion to dismiss the complaint, unanimously reversed, on the law, to the extent appealed from, with costs. Order of the same court and Justice, entered November 29, 1994, which vacated that portion of the previous order granting defendant Fireman's Insurance Company's motion for summary judgment on its counterclaim in the amount of $3,768,385, and which referred the amount to be awarded on the counterclaim to a Referee to hear and report, unanimously reversed, on the law, with costs, and the judgment of October 31, 1994 reinstated.

On December 11, 1989, plaintiff BIB Construction Company, a general contractor, entered into a construction contract with the City of Poughkeepsie in the amount of $5,497,000 for renovation of the Poughkeepsie Municipal Building. Pursuant to the contract, plaintiff furnished performance and payment bonds issued by defendant, Fireman's Insurance Company. On September 13, 1990, the City terminated the contract for alleged nonperformance. The City requested that defendant Fireman's complete the work and brought suit against it for breach of the performance bond.

On May 6, 1991, defendant Fireman's entered into a contract with L.A. Wenger Contracting, Inc. in the sum of $4,654,000 for completion of the work remaining on the project, and the City of Poughkeepsie discontinued its lawsuit against defendant. A year later, Fireman's terminated Wenger from the project for cause. Plaintiff requested that Fireman's

require Fidelity and Deposit Company of Maryland to complete the work pursuant to the terms of a performance bond issued by that surety on behalf of Wenger. Defendant refused, however, and completed the work itself. Fireman's maintains that it expended $4,000,000 more to complete the project than the payment remaining under the contract with the City because of the need to correct defective work performed by plaintiff.

Plaintiff commenced this action against Fireman's alleging six causes of action not at issue on this appeal. Fireman's counterclaimed asserting that, under the terms of the General Contract of Indemnity, plaintiff had agreed to indemnify defendant against any claims in connection with the performance bond issued on plaintiff's behalf. Fireman's moved for summary judgment dismissing the complaint and for an order directing plaintiff to deposit the sum of $3,765,385 with it as security for expenditures which might arise in connection with its completion of the contract. Supreme Court granted the motion on October 18, 1994 to the extent of directing plaintiff to post security with defendant and, on October 31, 1994, judgment was entered against plaintiff in the sum of $3,765,385. On November 29, 1994, however, the court vacated its October 18th order, concluding that a related action concerning plaintiff's default on its contract with the City of Poughkeepsie, then pending in Dutchess County, would have a "substantial impact" on the resolution of the case before it. The court stated that "additional evidence is necessary to be taken in connection with the amount of the collateral security and its terms and conditions." The amount to be posted as security was referred to a Referee to hear and report.

At issue in this matter is the amount to be deposited with defendant insurance company as security. Also at issue is whether plaintiff has stated any cause of action against Fireman's for which defendant may be liable in damages.

The General Contract of Indemnity executed by plaintiff specifically provides that, in the case of pending litigation, plaintiff will furnish defendant with a cash reserve. Paragraph 3 of the agreement recites that plaintiff promises "to deposit with [defendant], immediately upon demand, a sum equal to any loss reserve * * * that [defendant], *in its sole discretion,* establishes in connection with any bond" (emphasis added). Plaintiff advances two arguments why it should not comply with this provision: (1) the court should deny recovery to defendant because of its failure to mitigate damages and,

(2) the amount of damages sustained by defendant, if any, is a question of fact.

It is clear that plaintiff confuses the requirement to furnish collateral security with an award for indemnification. The posting of an adequate reserve does not represent a claim for damages or an award in indemnification. It is merely collateral security held in trust by the insurer that must be repaid to the extent that damages are reduced or not awarded (American Motorists Ins. Co. v United Furnace Co., 876 F2d 293, 300 [2d Cir]). By contrast, liability arising from an award for indemnification constitutes "a present obligation to pay a sum certain, and not a mere exposure to the hazard of unliquidated claims which may or may not ripen in the future" (National Sur. Corp. v Titan Constr. Corp., 26 NYS2d 227, 230, affd 260 App Div 911).

Paragraph 3 of the General Contract of Indemnity is not intended to create any liability. The deposit demanded by the insurer is not based on the maturity or liquidation of any claims, but represents security, in an amount within the sole discretion of defendant, in anticipation of possible losses (National Sur. Corp. v Titan Constr. Corp., supra, at 231). The obligation to make the deposit is subject to enforcement by specific performance: "The damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate" (supra, at 230). Finally, the subject provision specifically states that the amount of the deposit is at the "sole discretion" of the surety. So long as the sum demanded is reasonable, plaintiff " 'dealing at arm's length with relative equality of bargaining power' " must abide by this term of the contract (Westinghouse Elec. Corp. v New York City Tr. Auth., 82 NY2d 47, 55, quoting Equitable Lbr. Corp. v IPA Land Dev. Corp., 38 NY2d 516, 523).

As to the allegations of plaintiff's complaint against Fireman's, the first cause of action alleges that Fireman's completed the project knowing, as a result of its own investigation, that plaintiff had not defaulted in performance of its contract with the City of Poughkeepsie. However, pursuant to paragraph 12 of the indemnification agreement, defendant has the right to pay, settle or compromise any expense, claim or charge: the evidence of payment in satisfaction of such expense, claim or charge is prima facie evidence of the propriety thereof and of the liability of plaintiff to defendant. This indemnity agreement governs the relationship between plaintiff contractor and defendant surety (see, Travelers Indem. Co. v Buffalo Motor & Generator Corp., 58 AD2d 978). Once the

City declared plaintiff in default and demanded that defendant, as surety, fulfill plaintiff's obligations, defendant was required to comply, regardless of its own belief in the correctness of the City's action (see, *Maryland Cas. Co. v Grace,* 292 NY 194). In the absence of any indication of fraud or collusion, plaintiff's obligation to indemnify defendant was thereby implicated *(Maryland Cas. Co. v Grace, supra)*. The fact that another lawsuit is pending to determine whether plaintiff defaulted on its contract with the City is irrelevant to whether the defendant properly complied with its obligations as surety to the City of Poughkeepsie.

The second cause of action alleges that plaintiff is owed $1,000,000, representing the difference between the money remaining under the contract at the time of the purported default and the reasonable value of completing work on the project. In the absence of an allegation of fraud, bad faith or extravagance, defendant is entitled to be paid for the actual cost of completing the work, as provided in the indemnity contract *(McKegney v Illinois Sur. Co.,* 180 App Div 507), requiring dismissal of this cause of action.

The third cause of action alleges that plaintiff was damaged in the amount of $100,000 because defendant acted in bad faith in failing to require Wenger's surety, Fidelity and Deposit Company of Maryland, to complete the work following Wenger's default. However, the bond given by Fidelity and Deposit to defendant was exclusively for defendant's benefit, conferring no rights upon plaintiff (see, *Novak & Co. v Travelers Indem. Co.,* 56 AD2d 418, *lv denied* 42 NY2d 806) and, thus, no cause of action is stated.

The fourth cause of action alleges that, because of the dispute in the instant case, defendant refused to furnish plaintiff with a maintenance bond for another project, which was required to obtain final payment. However, as defendant asserts, the complaint does not allege that defendant under any obligation to issue the bond and, therefore, it fails to state a cause of action.

The fifth cause of action has been withdrawn, on consent, as plaintiff has received final payment on the project in issue.

The sixth cause of action, which plaintiff does not address in his appellate brief, alleges that defendant's agreement to complete work on the Poughkeepsie project resulted in plaintiff's inability to obtain a bond from any qualified surety. However, neither defendant nor any other surety company is obliged to issue bonds to plaintiff, and the complaint fails to

allege how defendant is responsible for the acts of any third-party bonding company. Therefore, this cause of action should likewise have been dismissed. Concur—Rosenberger, J. P., Ellerin, Rubin, Ross and Tom, JJ.